**David S. HAMANN, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: May 16, 1989.
Decided: Oct. 12, 1989.

be made by law.

Joseph A. Hurley, Wilmington, for appellant.

Gary A. Myers, Deputy Atty. Gen., Wilmington, for appellee.

Before CHRISTIE, C.J., and HORSEY and HOLLAND, JJ.

CHRISTIE, Chief Justice:

Defendant, David A. Hamann, appeals his conviction of violating 21 *Del.C.* § 4177(a),[1] driving a vehicle while under

---

**1.** 21 *Del.C.* § 4177(a) provides:

(a) No person shall drive, operate or have in actual physical control a vehicle, an off-highway

the influence of alcohol. First, he contends that the trial court breached his constitutional right of confrontation by not allowing his attorney to ask questions of the State Chemist which bore on the legitimacy of the measuring device used to determine blood alcohol content. Second, he charges that the trial judge violated Delaware Constitution art. IV, § 19, by asserting the validity of the scientific principles incorporated by the blood alcohol test in his instructions to the jury. Third, the appellant contends that the court improperly refused to sequester the chief investigating officer before the opening argument of defense counsel, and fourth, he contends that the court abused its discretion by asserting a fact which had not been established at trial in an answer to a question from the jury. We find no merit to any of these contentions, and thus we affirm the conviction.

At approximately 1:15 a.m. on April 18, 1986, Chief Michael Capriglione of the Newport Police observed the operator of a 1967 Chevrolet drive his vehicle through a red light. While following the car, Chief Capriglione also observed the car turn left into a one-way street and proceed for one block in the improper direction. Subsequently, the police officer commanded the operator to pull the car over, and he did so. When the officer approached the vehicle, he noticed an odor of alcohol coming from inside the car. He asked the driver, David A. Hamann, if he had consumed any alcohol that night, and Mr. Hamann said that he had. He then asked Mr. Hamann to exit the car so that he could perform field tests for sobriety. Mr. Hamann said that he would be unable to perform the physical dexterity tests because he was suffering from disc problems in his back. The physical tests were not administered, but Mr. Hamann was asked to recite the alphabet. His speech was slurred and he forgot some letters and transposed others. Chief Capriglione then took Mr. Hamann to Delaware State Police Troop 6 Headquarters, where a State trooper administered a breath test on Mr. Hamann at 1:27 a.m. The test revealed a blood alcohol level of .15 percent. Mr. Hamann was charged with violating 21 *Del.C.* § 4177, operating a vehicle while under the influence of alcohol, and 21 *Del.C.* § 4107, failure to obey a traffic control device. He was found guilty of both charges in Superior Court in April, 1988. He appeals only the driving under the influence conviction.[2]

I.

At the trial, the State introduced into evidence copies of pages of a log showing calibrations performed on the machine[3] which was used to measure Mr. Hamann's breath sample on April 18, 1986. The dates on the forms indicated that the calibrations were taken on April 15, 1986, and April 25, 1986, and were performed by David Sockrider, State Chemist. Mr. Sockrider was not called as a witness in person by the State.

These documents were introduced by the State without objection during the testimony of Officer Gagnon. Officer Gagnon testified that these documents indicated that the machine was operating properly on April 15, 1986 and on April 25, 1986. Officer Gagnon also testified that on April 18, 1986, he performed tests on the machine prior to administering the breath test to Mr. Hamann. In the first of these tests, air was blown into the chamber which then produced a reading of 00 thus indicating that there was no alcohol present. He then inserted a quartz attenuator into the machine which produced a reading of .25, the specified reading required within plus or minus .01. Officer Gagnon then took out the quartz attenuator and put more fresh air into the chamber and observed a reading of 00. At this point, the defendant blew into the machine with enough force to cause a green light to turn on and long enough to complete a cycle as indicated by a yellow light. The machine indicated a reading of .15. Immediately after complet-

---

vehicle, a moped or a bicycle while under the influence of alcohol or of any drug or any combination of drugs and/or alcohol.

**2.** The second conviction is not appealable because the sentence imposed, a $25.00 fine, does not meet the threshold limit of $100.00 needed to invoke the appellate jurisdiction of this Court. Del.Const. art. IV, § 11(1)(b) (1897).

**3.** CMI Intoxilyzer 4011AS/27/102090

ing that portion of the test, Officer Gagnon again filled the chamber with fresh air which produced a reading of 00. The officer testified that there was nothing during the entire operation of this test which caused him to conclude that the machine was not functioning properly. Defense counsel asked Officer Gagnon during cross-examination if the machine were capable of malfunctioning, and he answered, "Yes." The record contains no other testimony at the trial regarding the operation or accuracy of the Intoxilyzer machine used in the test of Mr. Hamann on April 18, 1986.

After the prosecution rested its case, defense counsel made a proffer of evidence regarding a line of questioning the defense wished to put to David Sockrider, who had been subpoenaed as a witness for the defense. Defense counsel argued that his questioning would be cross-examination, because, as he asserted, Mr. Sockrider had in effect been used as an expert witness by the prosecution in that the two documents which he had signed were admitted as evidence. Defense counsel also said that he would question Mr. Sockrider as an expert on the nature of the machine used in Mr. Hamann's breath test. He would be asked to give his opinion about whether the quartz attenuator would cause error if it were nicked, marred, or soiled or placed into the machine improperly; whether the conversion principle of 2100 to 1 part of alcohol in the blood to alcohol in the air which is used by the machine is uniformly applicable to the entire population and to what extent might the ratio vary from one person to another; whether human temperatures vary and to what extent the machine measurements depend on a uniform human temperature of 34 degrees Centigrade or 98.6 degrees Fahrenheit; and whether a

capped or false tooth could collect alcohol in the mouth and to what extent it might produce a distorted reading.

All of these issues had been addressed earlier by the Superior Court in an evidentiary hearing involving several cases including this case. The State had moved to quash subpoenas issued by several defendants, each of whom had been shown to have alcohol content in their breath above the statutory limit.[4] The defendants had subpoenaed David Sockrider, among others, to appear when documents which they had prepared were introduced as evidence of the proper functioning of the breath test machines. The court denied the motion to quash the subpoenas on the basis that once the documents were introduced, the defendants' "right of cross-examination" was protected by the sixth amendment of the United States Constitution.[5] *State v. Adams*, Del.Super., Cr.A. No. IN85–10–0016T, Gebelein, J. (Nov. 4, 1987). However, the court limited the scope of cross-examination of the signers of the documents to "the procedures followed in calibration tests, and preparation of reports of the results of the calibration tests on the machine at issue in the case." Regarding the witnesses, the court added, "Their presence does not make them available to the defense as expert witnesses for any other purpose." *Id.* The trial judge in Mr. Hamann's case applied this same distinction and ruled that each of the areas of the defense counsel's questioning of David Sockrider exceeded the scope of the legally permissible cross-examination under *Adams* and, therefore, would not be allowed. The defense argues that this ruling violated the defendant's right of confrontation under the sixth amendment.

**4.** 21 *Del.C.* § 4177(b) provides:

(b) Any person charged under subsection (a) of this section whose blood alcohol concentration is one tenth of 1% or more by weight as shown by a chemical analysis of a blood, breath or urine sample taken within 4 hours of the alleged offense shall be guilty of violating subsection (a) of this section. This provision shall not preclude a conviction based on other admissible evidence.

**5.** U.S. Const. amend. VI.

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

■■ Although at the trial the reports signed by Mr. Sockrider were introduced without explanation of their evidentiary character, documents such as these have been admitted as business records under D.R.E. 803(6). *Best v. State*, Del.Supr., 328 A.2d 141, 143 (1974). Thus, it appears that the documents were admitted under an exception to the hearsay rule, even though Mr. Sockrider himself did not testify. The trial court upheld the defendant's right to subpoena and to cross-examine Mr. Sockrider, on the basis of the right to confront witnesses guaranteed under both the U.S. and Delaware Constitutions. U.S. Const. amend. VI; Del.Const. art. 1, § 7.[6] The right of confrontation is not absolute, however. *See McLean v. State*, Del.Supr., 482 A.2d 101, 103 (1984). It is subject to the trial court's discretion regarding scope. D.R.E. 611. Specifically, cross-examination should be limited to matters raised in direct examination and those affecting the credibility of the witness. D.R.E. 611(b).[7] Mr. Sockrider was available to testify, and the defense was permitted to cross-examine him as a witness. The areas of inquiry proposed by defense counsel, however, did not address the actual procedures used by Mr. Sockrider on the dates that he calibrated the machine, nor did they target Mr. Sockrider's credibility as the one who prepared those records. The State did not introduce Mr. Sockrider as an expert on the general legitimacy of the machine used in the breath test and the scientific principles involved in its operation. Therefore, it was proper and within the trial court's discretion to exclude the proffered testimony.[8]

## II.

The defendant next challenges the instructions given to the jury by the trial judge. In his charge, the trial judge stated:

Delaware law provides that any person charged with this offense whose blood alcohol concentration is one-tenth of one percent or more by weight as shown by a chemical analysis of a breath sample, taken within four hours of driving a motor vehicle, shall be guilty.

This provision does not preclude a conviction based on other evidence. In other words, a conviction in this case may be based on the Intoxilyzer evidence and/or any other evidence in the case. This court recognizes that the Intoxilyzer uses a scientifically sound method of measuring the alcohol content of a person's blood by weight.

The State is not required to prove the underlying scientific reliability of the method used by the Intoxilyzer. However, the State is required to establish that the Intoxilyzer was in proper working order and that it was correctly operated by a qualified person.

■ The defendant argues that the trial court abused its discretion by including the assertion that "the Intoxilyzer uses a scientifically-sound method of measuring the alcoholic content of a person's blood by weight." This, it is argued, was an implicit

6. Del.Const. art. I, § 7. *Procedural rights in criminal prosecutions; jury trial; self-incrimination; deprivation of life, liberty or property.*

Section 7. In all criminal prosecutions, the accused hath a right to be heard by himself and his counsel, to be plainly and fully informed of the nature and cause of the accusation against him, to meet the witnesses in their examination face to face, to have compulsory process in due time, on application by himself, his friends or counsel, for obtaining witnesses in his favor, and a speedy and public trial by an impartial jury; he shall not be compelled to give evidence against himself, nor shall he be deprived of life, liberty or property, unless by the judgment of his peers or by the law of the land.

7. D.R.E. 611(b) provides:

Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.

8. The defense raised the confrontation clause as its only basis of objection to the exclusion of the proffered testimony. The prosecution in its answering brief on appeal argued that, in fact, the correct basis for objection was the compulsory process clause because the defendant had subpoenaed Mr. Sockrider. This Court recognizes that there are distinct differences between the two clauses. Those differences, however, were not directly argued by the parties and, thus, will not be addressed in this opinion.

comment on the evidence in violation of the Delaware Constitution art. IV, § 19.

The words used by the trial judge included an accurate declaration of the law of Delaware. The first paragraph states the elements of the offense exactly as they appear in 21 *Del.C.* § 4177(b). It is settled law that 21 *Del.C.* § 4177 "provides for no presumption of guilt, but instead provides that any person having the specified blood alcohol concentration 'shall be guilty.'" *Coxe v. State*, Del.Supr., 281 A.2d 606, 607 (1971). Evidence was presented to show that the defendant had been operating a vehicle, and that a sample of his breath taken within four hours of his having driven revealed an alcohol content above the statutory limit of .10 percent. The jury was accordingly instructed that the statute required a verdict of guilty if they believed the evidence to be true.

In the second paragraph quoted above, the court recognized the scientific soundness of the method used to measure alcohol content of breath. This is a statement of the law of Delaware. This Court has upheld the legislative determination that blood alcohol content of .10 percent or higher as revealed in a breath sample inhibits a person's driving ability so as to present a public danger. *Coxe, supra,* at 607. This Court has also ruled that the statute does not contain a "blind spot" by defining guilt on the basis of a test which is administered after the person is no longer driving a vehicle. *Slaughter v. State*, Del.Supr., 322 A.2d 15, 16 (1974). The Superior Court has held that while the possibility of variances in readings may reflect "an inherent weakness" in the statute, the legislation is drafted so as to "preclude these factors from being considered as issues of fact." *State v. Rucker*, Del.Super., 297 A.2d 400, 403 (1972). We rule that this is a correct statement of the law. Consequently, we conclude that the trial judge made a correct statement of the law and not a comment on the evidence.

■ In the third paragraph, the court delineated the proof which must be presented by the prosecution with regard to the machine and the operator at the time of the test. *Coxe, supra,* at 607 ("a proper and timely test"). The charge also correctly described the law that the State does not have the burden to prove the validity of the scientific principles involved in the blood alcohol tests in general. *Rucker, supra,* at 403; *see also, State v. Adams*, Del.Super., Cr.A. No. IN85–10–0016T, Gebelein, J. (Nov. 4, 1987). (See Appendix attached.) If the defendant desired to challenge the accuracy of the test insofar as he presented an individual exception to those scientific principles, he might have been given a chance to do so. *State v. McLaughlin*, Del.Super., 514 A.2d 1139, 1142 (1986).[9] However, the defense did not offer to present any evidence to that effect, nor was testimony offered to show that the machine may have malfunctioned during the breath test, that the operator was unqualified, or that the operator did not follow proper procedures. The defendant's objections to the instructions given to the jury by the trial judge are therefore without merit.

### III.

The defendant argues that the trial court abused its discretion by not ordering Chief Capriglione to be sequestered during the opening argument by defense counsel. If Chief Capriglione were to have heard the opening argument, it is asserted, he would have improperly been allowed to receive a preview of the defendant's theory of his case prior to being cross-examined. The trial judge did not sequester the chief investigating officer, and the defense chose not to present an opening statement.

■ Whether or not witnesses will be excluded from hearing the trial proceedings is usually within the discretion of the trial court.[10] *See Grace v. State*, Del. Supr., 314 A.2d 169, 170 (1973). Rule 615(2) exempts from sequestration, however, "an officer or employee of a party

---

9. This Court does not here pass upon the validity of that holding.

10. D.R.E. 615 Exclusion of Witnesses

At the request of a party the court may order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not

which is not a natural person designated as its representative by its attorney." D.R.E. 615(2). The language in this sentence is not discretionary. This Court has held that this language describes the chief investigating officer for the prosecution in a criminal case, and thus, absent other reasons for sequestration, he cannot be excluded from the trial even if he is going to testify. *Burke v. State*, Del.Supr., 484 A.2d 490, 498 (1984). The denial of the defendant's motion was therefore not an abuse of discretion, but a correct interpretation of the rule.

## IV.

■ The defendant contends that the trial judge abused his discretion by answering a jury question in a way not conforming with the evidence presented in the case, thus violating the Delaware Constitution art. IV, § 19. We do not agree.

During its deliberations, the jury sent four questions to the trial judge. One of the questions asked, "Is [sic] the chemical analyzer blow tube fit between the lips or is it inserted into the mouth?" The answer given by the trial judge, after discussion with counsel, stated, "There was no evidence of how far the blow tube intruded into Mr. Hamann's mouth when he was— when the test was administered. Although you do recall the testimony of Officer Gagnon, that it required a sustained flow of breath for the test to work properly." Defense counsel had requested that the trial judge add the words "if at all" after the word "intruded." We find no testimony in the record as to exactly how Mr. Hamann delivered the breath sample to the machine. Whether or not a tube was used, or a mouthpiece of any sort, was not revealed by oral testimony of any witness. It is obvious that the jury was concerned about this gap in the evidence. The answer to the jury's question indicated clearly that

there was no evidence presented which would help them decide this factual question. Although the answer may have done more than reflect the record, it was not an improper comment on the facts in the case, and it did not amount to reversible error. The trial judge's answer to the question meets the standard for instructions established by this Court when it stated that they must be an accurate application of the law to the facts, and that the statements must be "reasonably informative and not misleading, judged by common practices and standards of verbal communication." *Baker v. Reid*, 44 Del. 112, 57 A.2d 103, 109 (1947); *see also, Sheeran v. State*, Del. Supr., 526 A.2d 886, 893–94 (1987).

We find no reversible error or abuse of discretion, and thus the judgment of the Superior Court is AFFIRMED.

## APPENDIX

In the Superior Court of the State of Delaware in and for New Castle County

The State of Delaware

v.

Lee Adams, Michael Arnott, Terrie L. Boyes, Laurence J. Brown, Eileen Buchanan, Jonathan Charles, David S. Hamann, Mark F. Hoffstein, Leroy Moody, Donald A. Pyle, Steven Shellem, James A. Watson, Defendants.

Cr.A. No. N85–10–0116T, N86–05–0932A, IN86–05–1249, N86–03–0469T, N85–07–0102T, N85–10–0430T, 0431, N86–05–1316T, N85–12–0573A, N86–10–1657T, N85–05–0415A, N86–03–1432T and N86–03–1030A

## OPINION

Date Submitted: April 8, 1987

Date Decided: November 4, 1987

Upon the State's motion to quash the subpoena for the State Chemist issued by

---

authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated

as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.

the defendant. Upon the State's motion in limine. Both motions are DENIED.

Cynthia R. Kelsey, Esquire of the Department of Justice, Wilmington, Delaware for the State.

John Willard, Esquire, Wilmington, Delaware for defendants Brown and Shellem.

Joseph A. Hurley, Esquire, Wilmington, Delaware for the remaining defendants.

GEBELEIN, Judge.

The defendants in these criminal cases which have been consolidated for motion purposes have been arrested for driving under the influence of alcohol, and have trials pending in Superior Court.[1] The defendants have all subpoenaed one or another of the State's employees: Carol Wilkerson or David Sockrider of the State Chemist's Office; or Dr. Haq or Dr. Das Gupta of the State Medical Examiner's Office. The State has filed a motion to quash these subpoenas as well as a motion in limine to prevent the testimony sought.

An evidentiary hearing was held on December 5, 1986 to develop the facts at issue. The State and the defendants have agreed on certain facts. The New Castle County Police, the Delaware State Police, and the Newark Police use a CMI Intoxilizer 4011AS. The Wilmington Police use a Breathilyzer 900A. The State Chemist's Office maintains and tests the New Castle County Police and Delaware State Police machines. Dr. Haq maintains and tests the Newark Police machine and Dr. Das Gupta maintains and tests the Wilmington Police machine.

Both the breathilyzer and the intoxilizer use the same basic scientific principle to measure an individual's blood alcohol content. A breath test was administered to each defendant in these cases, using one of the machines. Each was purportedly found to have a blood alcohol content above the legal limit. *See,* 11 *Del.C.* § 3505.

At the evidentiary hearing, Mr. Sockrider demonstrated the usage of the CMI Intoxilizer 4011AS, and Dr. Das Gupta explained the use of the Breathilyzer 900A. Both experts testified about the scientific principles upon which the machines are based. They also explained the calibration checks performed and the calibration records they keep as to the tests performed. The State will seek to introduce the records of calibration checks as business records.[2] *See,* D.U.R.E 803(6).

At the hearing, both testifying experts acknowledged the existence of scientific articles questioning the constancy of the ratio to alcohol in the blood and alcohol in the breath, and articles noting that a subject's body temperature can affect the machines' readings.

Defendants have subpoenaed the enumerated employees for trial in an effort to make them available for cross-examination as to the results of their calibration tests. The State has challenged these subpoenas by filing a motion to quash and a motion in limine.

The defendants argue that they have a constitutional right to require the appearance as their witnesses, witnesses employed by the State (who routinely testify as experts on other issues) who have calibrated testing devices, the results of which are being sought to be introduced against them. The State responds by asserting that there is no such right when the evidence is already properly introduced under another rule of evidence.

The issue the Court must decide is whether a defendant in a driving under the influence case may subpoena the State's intoxilizer and breathilyzer calibration experts, for purposes of cross-examination as

---

1. Arrests were made by officers of the Newark Police Department, Delaware State Police, New Castle County Police Department, and Wilmington Police Department.

2. It appears that in most cases there are several sets of calibration records maintained for each machine, a log that stays at the police station and two logs for "court use". What effect this might have on a business records exception to the hearsay rule has not been raised and will be left for another day.

to their calibration checks and the results of those checks.

The Sixth Amendment to the United States Constitution guarantees, *inter alia,* a defendant the right "to be confronted with the witnesses against him" and "to have compulsory process for obtaining witnesses in his favor". *U.S. Const.,* Amend. VI. The U.S. Supreme Court has referred to these rights as "the right to present a defense." *Washington v. State of Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967). The Delaware Supreme Court has echoed the Supreme Court in *Keshishian v. State,* Del.Supr., 386 A.2d 666 (1978), holding that a criminal defendant has a right to compulsory process for obtaining witnesses' appearance to testify on his behalf. This right is limited, however, to subpoenaing witnesses who can give evidence which is material and favorable to his defense. *United States v. Valenzuela–Bernal,* 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982). Material evidence is that evidence which might affect the outcome of the trial. *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

Here, the evidence at issue consists of the calibration certification sheets signed by the experts. Through these records, the State will seek to establish that a monthly calibration took place; and therefore, by inference that the machine and its components were working properly. The State claims this evidence is properly admissible as a business record. The defendants in these cases concede the applicability of the business records exception to the hearsay rule, but seek to have the experts present in Court so as to cross-examine them as to the information listed on the calibration certification sheets, the tests actually performed as well as the validity of the procedures followed.

The issue of whether the breathilyzer or intoxilizer was operating properly and accurately is a crucial or determinative issue in these cases.[3] Absent an accurate breath test, the State would lose its most important piece of evidence. The Court concludes that the evidence is clearly material.

The evidence sought by defendants may be favorable to the defendant in any given case. Defendants have a right to call these witnesses to testify concerning these records.

The purpose of the adversary system is to seek the truth, and the process of cross-examination is the greatest engine for the discovery of truth known to our legal system. *See United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *Pointer v. State of Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The Sixth Amendment to the United States Constitution encompasses a right of cross-examination. 3 W. LaFave and J. Israel, *Criminal Procedure* 14–15 (1984). Any State restraints on cross-examination must be tested against this constitutional right. *Id.* The right of cross-examination can be overcome "only for *compelling* reasons." *Id.* at 15 (citing Western, *Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases,* 91 Harv.L.Rev. 567, 580–581 (1978) (emphasis added)). *See also, Smith v. Illinois,* 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968); *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

The State claims this testimony would violate the rule that only indigents are entitled to expert witnesses at public expense. *Riley v. State,* Del.Supr., 496 A.2d 997 (1985), *cert. denied, Riley v. Delaware,* 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986). This argument misses the point of the subpoenas issued. Defendants seek to call the expert employees not as their own expert witnesses, but rather to call them as fact witnesses who produced the reports

---

**3.** The significance of the test is made clear by statute, 21 *Del.C.* § 4177 and case decision. "The statute provides for no presumption of guilt, but instead provides that any person having the specified blood alcohol concentration 'shall be guilty'. To establish guilt, the State must prove only that the defendant was in physical control of the vehicle, and that a *proper* and timely test showed the required percentage of alcohol concentrated in the defendant's system." *Coxe v. State,* Del.Supr., 281 A.2d 606, 607 (1971).

relied upon by the State and to cross-examine them only as to their activities in producing those reports.

These cases are not the same as *State v. McLaughlin,* Del.Super., 514 A.2d 1139 (1986). In that case, the defense sought to call these same witnesses as experts to testify as to general scientific principles as well as tests or studies they had performed as State experts which studies were unrelated to the specific facts of the case at issue. In these cases, the defense seeks to call these witnesses only as to the specific calibration tests run on the machine at issue in the case and the reports produced therefrom. The Court finds these witnesses to be in the same position as police officers who gather evidence, lift fingerprints, perform coordination tests; doctors who perform emergency services; technicians who analyze drugs, etc. They are State employees who perform functions during which they observe factual data that is material to the issues in the case. As such, they must expect to be subpoenaed to testify as to their observations and the tests they perform in individual cases.

While the subpoena of these witnesses imposes a burden on the State, the Court does not find compelling reasons for denying defendants their constitutionally protected right of cross-examination. The Court will permit these employees to be subpoenaed for trial; but their examination will be limited to the procedures followed in calibration tests, and preparation of reports of the results of the calibration tests on the machine at issue in the case. Their presence does not make them available to the defense as expert witnesses for any other purpose. *See, State v. McLaughlin, supra.*

The State's motions are DENIED.

IT IS SO ORDERED.