Elmer E. TICE, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: Feb. 9, 1993.
Decided: Feb. 12, 1993.
Opinion: April 26, 1993.

Paul S. Swierzbinski, Office of Public Defender, Dover, for appellant.

Timothy J. Donovan, Jr., Dept. of Justice, Wilmington, for the State.

Before MOORE, WALSH and HOLLAND, JJ.

MOORE, Justice.

Elmer E. Tice appeals his convictions in the Superior Court of assault, reckless endangering, possession of a deadly weapon, and certain motor vehicle charges related to his arrest. We address an issue of first impression: May a defendant, charged with assault, introduce character evidence of the victim's prior bad acts as an essential ele-

ment of a self-defense claim? We conclude that the character of the victim is not an essential element of a self-defense claim. The evidence is admissible, however, under D.R.E. 404(b),[1] subject to the standards of *Getz v. State*, Del.Supr., 538 A.2d 726 (1988), for non-character purposes to establish a defendant's subjective state of mind at the time he or she purported to act in self-defense. Here, the defendant had full opportunity to present that evidence. Accordingly, we affirm his convictions.[2]

## I.

On the evening of September 8, 1991, the defendant was in his kitchen talking to Thomas Daniels and Ricky Tharp. Margaret Bleiler, the two-year old granddaughter of Tice's fiancee, Mary McNatt, was playing near the stove. Two other men, Fred Steffon and Ed Palmer, were talking in the living room adjacent to the kitchen.

Sometime before 7:00 p.m., Mary McNatt went to the kitchen and asked everyone to be more quiet so that she could sleep. Daniels, who is McNatt's son, took her request as an insult and directed a stream of profanity and verbal abuse against her. Their argument continued for at least five minutes during which time Tice left the kitchen.

Tice returned shortly thereafter holding a rifle at his hip. He then fired without warning at Daniels who was standing at the north end of the kitchen. His first shot missed and the bullet traveled a few feet to the right, striking the rim of a table where Ricky Tharp was sitting. Tice immediately fired a second shot that hit Daniels in the left thigh. Daniels turned and moved quickly past the stove and area, where Margaret Bleiler was playing, in an effort to reach the kitchen door. Then Tice fired again and hit Daniels in the left hip.

Despite his wounds, Daniels managed to leave the kitchen through the back door. Tice fired his fourth and last shot through the screen door, hitting Daniels in the chest. Daniels fell and Tice went over to

---

1. D.R.E. 404(b) is identical to F.R.E. 404(b).

2. We previously announced our decision in this case by an *Order* dated February 12, 1993, which is hereby withdrawn.

him and picked him up. Tice rubbed his hand through Daniels' hair and told him he would be alright. Then Tice took McNatt's car and fled the scene. Daniels ultimately received medical treatment which saved his life, but the final shot damaged his spinal cord, leaving him permanently paralyzed from the waist down.

Tice was subsequently indicted and tried by jury. During the State's case-in-chief, defense counsel requested permission to cross-examine the victim, Daniels, and his mother regarding specific instances of Daniels' prior violent conduct against Tice. The defense also sought to inquire into past episodes of verbal abuse that Daniels had directed against his mother. Defense counsel contended that this evidence was relevant as prior bad acts because "we will be attempting to fashion a type of self-defense or defense of others type of defense." The trial judge ruled that the application was premature. The court reasoned that while the proffered evidence might become relevant during the defense portion of the case, it was beyond the scope of any testimony the State adduced during its direct examination of the witnesses. Accordingly, the court directed the witnesses to remain available for call by the defense.

Later, during the defense portion of the case, Tice's counsel elicited testimony from the defendant regarding several instances of Daniels' violent conduct. There was no objection from the State. Tice's counsel did not, however, call either the victim, Daniels, or the victim's mother, Mary McNatt, to substantiate these accounts. The jury convicted Tice of Assault 1st Degree, three counts of Reckless Endangering 1st Degree, Possession of a Deadly Weapon During the Commission of a Felony, Possession of a Deadly Weapon by a Person Prohibited, Driving While under the Influence, Driving Without a Valid License and Failure to Stop on Command of a Police Officer.

## II.

■ Tice's first argument is that the trial court erred in denying him the right to cross-examine Daniels and other witnesses about specific instances of Daniels' past misconduct. We review a trial court's decision regarding the admission of evidence under an abuse of discretion standard. *See Dorman v. State*, Del.Supr., No. 434, 1990, Moore, J. order at 2 (January 27, 1992) [608 A.2d 726 (table)].

Tice argues that he sought to cross-examine Daniels to show that Daniels' past acts of violence against Tice justified defendant's reasonable belief that he was in danger of death or serious physical injury if he did not defend himself. He claims that it was admissible as an essential element of his self-defense claim under Delaware Rule of Evidence 405(b). Tice also argues that the cross-examination should have been permitted to show bias on the part of Daniels, and that the failure to allow this impeachment violated Tice's constitutional right of confrontation.

Delaware Rule of Evidence 405(b) is identical to the comparable federal rule of evidence. It provides that "[i]n cases in which character or a trait of character of a person is an essential element of a charge, claim or defense, proof may also be made of specific instances of his conduct." The advisory committee note to the federal rule cautions, however, that because evidence of specific instances of conduct possesses "the greatest capacity to arouse prejudice, to confuse, to surprise and to consume time," such evidence may be used only when character is in issue in the *strict sense*. Fed. R.Evid. 405 Advisory Committee Note (emphasis added). Character is only in issue in a strict sense when it is a "material fact that under the substantive law determines the rights and liabilities of the parties." McCORMICK ON EVIDENCE, (E. Cleary 3d ed. 1984) at p. 244.

■ In a claim for self-defense, the essential element is whether the defendant subjectively believed the use of force was necessary for his protection, *see, e.g., Moor v. Licciardello*, Del.Supr., 463 A.2d 268, 271 (1983), and not whether the victim acted in conformity with a character trait of aggressiveness. The character of the victim is not, therefore, an essential element

of a self-defense claim. Accordingly, specific instances of past conduct cannot be used as circumstantial evidence of a victim's character for violence or aggression under D.R.E. 405(b). *See Perin v. Anderson,* 784 F.2d 1040, 1045 (10th Cir. 1986); *Thompson v. Commonwealth,* Ky. Supr., 652 S.W.2d 78, 80 (1983), *overruled on other grounds,* 767 S.W.2d 548 (1988).

■ This is not to suggest that the prior bad act evidence was inadmissible here. In fact, just the opposite is true. The evidence was admissible, but for different reasons from those suggested by Tice. Delaware Rule of Evidence 404(b) provides that evidence of other crimes, wrongs or acts may be introduced for a proper noncharacter purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. Del.R.Evid. 404(b). This list is not exclusive, however, and evidence meeting the standard of admissibility may be introduced whether or not it fits into one of these categories. *Getz v. State,* Del.Supr., 538 A.2d 726, 730 (1988).

■ Since one of the factors that influences the reasonable belief of a defendant, threatened with imminent assault, is the defendant's knowledge or awareness of the victim's past acts of violence, these instances are relevant for their proper noncharacter purpose. Subject to satisfaction of the requirements articulated in *Getz,* the defense was entitled to use this evidence under D.R.E. 404(b) to show the fear experienced by the defendant, and thus, establish the subjective state of mind required to assert the claim of self-defense. *See Government of Virgin Islands v. Carino,* 631 F.2d 226, 229–30 (3rd Cir.1980); *U.S. v. Talamante,* 981 F.2d 1153, 1157 (10th Cir. 1992) (recognizing, without deciding, the issue).

In this case, however, the defense cannot claim that the evidence was excluded. Instead, the record clearly shows that during the defense portion of the case Tice's counsel elicited all of these incidents on defendant's direct examination:

Q. Now, you told us, sir, that you are afraid of Tommy Daniels. Can you tell us why you were afraid of this young man?

A. Well, he has beat me up in the past quite a few times.

Q. How many times?

A. Oh, four good ones that I know of.

Q. You say four times?

A. Four good ones, yeah.

Q. What does four good ones mean?

A. Well, bruises and laid up in bed for awhile. I was laid up in bed for a week one time and one time I had to go to the hospital.

Q. How did you get to the hospital?

A. I had to call 911. I had to crawl back to Ed Failey's bedroom. I couldn't get in mine because the door was locked. I had to use the phone.

Q. Do you remember anything about the ambulance from Felton?

A. No. I don't know what ambulance took me.

Q. Did you get to the hospital in an ambulance?

A. Yeah.

Q. And what were you treated for?

A. I don't know. They x-rayed me. They sewed my face up. My back was hurting me real bad. I didn't know whether it—I didn't know whether it was ribs broke or what.

Q. How did that confrontation arise, the hospital incident when you ended up in the hospital?

A. That was the argument out in the yard. He made an attack on my cousin Jimmy who was sitting down by the tree. We were all drinking some. Tommy [Daniels] when he gets drinking he gets violent so he was attacking towards Jimmy and I had a mug and I hit him in the back of the head with the mug to slow him down.

Q. Did he end up getting any stitches?

A. Yeah, he got stitches in the back of his head on this one and I went into the house back door and he come in the front door and, boy, he put me in the hospital then.

Q. And how many times has he—you say a total of four times he has beaten you bad. Have you had other confrontations where he has beaten you in addition to that?

A. Yeah, but it wasn't anything I didn't get away from; just small things.

Q. Have you ever seen Tommy [Daniels] do violence towards his mother?

A. Oh, yes.

Q. How many times?

A. We lived in Clayton he knocked her through a shower screen into the bathtub. I just went in there and I helped get her out of there. I had to get him out first. That's when he was younger.

Q. Did you ever see him have a confrontation with somebody who was maybe mentally slow, maybe not necessarily retarded, but slow?

At this point the State objected to the evidence as cumulative. The trial judge overruled the objection and allowed the defendant to continue. Tice then testified that the victim had assaulted another friend, and that Daniels was basically a bully who picked fights with people weaker than himself. It is clear, therefore, that Tice presented his prior bad acts evidence to the jury.

### III.

Tice's argument is thereby reduced to nothing more than a complaint about the order of proof at trial. He contends that the denial of his right to cross-examine Daniels about these instances during the State's case deprived him of the opportunity to impeach Daniels for bias. Tice further relies on *Van Arsdall v. State*, Del. Supr., 486 A.2d 1 (1984) for the proposition that, by preventing him from impeaching the victim for bias, he was denied his constitutional right of confrontation. U.S. Const. amend. VI; Del. Const. art. 1, § 7.

■ Clearly, the order of proof lies within the sound discretion of the trial judge. *Gaston v. State*, Del.Supr., 234 A.2d 324, 325 (1967); *see also* D.R.E. 611(a). The court's authority in this re-

spect is broad, and we will not overturn its decision regarding the mode and order of presenting evidence unless it infringes on a constitutional right or constitutes an abuse of discretion. *Van Arsdall v. State*, Del. Supr., 486 A.2d 1, 8–9 (1984), *vacated on other grounds*, 524 A.2d 3 (1987). Having reviewed the record in this case, we are satisfied that no such abuse occurred.

■ First, the concerns we articulated in *Van Arsdall* are not implicated here. Tice never argued to the trial court that he wanted to introduce the specific instances of Daniels' past violent conduct to impeach the victim for bias. Instead, defendant made clear that the evidence was offered for the sole purpose for which it was relevant—bolstering Tice's self-defense claim. Second, we have held that the right of confrontation is not absolute, but rather, is subject to the trial court's discretion regarding scope. *Hamann v. State*, Del. Supr., 565 A.2d 924, 928 (1989). Accordingly, we have directed that cross-examination should be limited to matters raised in direct examination and those issues affecting the credibility of the witness. *Id.*

■ Tice was never denied the right to examine these witnesses for bias. Consistent with our ruling in *Hamann*, Tice was only required to delay his presentation of the victim's prior bad acts until the defense portion of the trial. Moreover, the trial judge made it clear to Tice that he could call these witnesses and fully examine them on this subject during his case-in-chief. Why Tice's counsel did not do so later in the trial is beyond the scope of our review. It is, however, indisputably the type of tactical decision trial counsel could make and about which Tice may not now complain on appeal. *Stansbury v. State*, Del.Supr., 591 A.2d 188, 191 (1991).

### IV.

Tice also appeals the trial court's refusal to grant his Motion for Judgment of Acquittal on Counts III and IV of the indictment. These counts alleged that the defendant recklessly engaged in conduct which created a substantial risk of death to Ricky

Tharp and Margaret Bleiler by firing a rifle at Thomas Daniels, who was at that time in close proximity to both victims. Tice submits that at the time of the shooting, Ricky Tharp and Margaret Bleiler were outside the field of Tice's fire and thus, his shooting did not create a substantial risk of death to them. If true, the essential elements of First Degree Reckless Endangering would be absent and the Motion for Judgment of Acquittal on those counts should have been granted.

■ We review claims of insufficient evidence to determine whether, considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of each offense beyond a reasonable doubt. *Robertson v. State*, Del.Supr., 596 A.2d 1345, 1355 (1991). In this case, the prosecution only had to prove that Tice's act of shooting at Daniels resulted in a substantial risk of death to Tharp and Bleiler. *Oney v. State*, Del.Supr., 397 A.2d 1374, 1376 (1979).

■ The evidence offered at trial indicated that Tice, standing at the south end of the kitchen at the hall entrance, rapidly fired three shots from his hip at Daniels, who was standing at the north end of the kitchen. A diagram prepared by the police indicates that the kitchen is approximately fourteen feet (along the north-south axis) by twelve feet (along the east-west axis). The presence of a table, chairs, appliances and a countertop greatly reduces the useable dimensions of this room. When Tice opened fire, Daniels was standing at the sink located at the northern end of the room, midway between the east and west walls.

The evidence further disclosed that Ricky Tharp was also at the northern end of the room, sitting on a chair between the table and the counter, approximately three feet to Daniels' left. Tice's first shot struck the table at which Tharp was sitting, shattering its glass top. The bullet fragmented upon impact, and the medical evidence indicates that Daniels was struck in the arm by one of the fragments. The exact position of two year old Margaret Bleiler at the time of the shooting was less certain. Daniels testified, however, that after Tice's second shot struck him in the leg, he moved towards the stove, pushing the child out of his way before the third shot struck him in the hip.

From the evidence adduced at trial, the jury could reasonably conclude that Daniels' rapid fire hip shooting into a narrow and crowded kitchen created a substantial risk of death to Ricky Tharp and Margaret Bleiler. The confined area in which the shooting occurred increased the risk of bullet fragmentation and ricochet, enhancing the danger to the unintended victims. Accordingly, there was sufficient evidence to sustain the convictions.

The judgment of the Superior Court is AFFIRMED.