John W. LONGFELLOW, Sr., Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 104, 1996.

Supreme Court of Delaware.

Submitted: Dec. 17, 1996.
Decided: Feb. 10, 1997.

Bernard J. O'Donnell (argued), and Paul S. Swierzbinski, Assistant Public Defenders, Office of Public Defender, Wilmington, for appellant.

John Williams, Deputy Attorney General, Department of Justice, Dover, for appellee.

Before VEASEY, C.J., WALSH, and HOLLAND, JJ.

WALSH, Justice:

In this appeal, we confront an evidentiary issue of first impression: is the admission of the hearsay statement of a deceased declarant in the State's rebuttal case, a violation of the Confrontation Clause of the Sixth Amendment to the United States Constitution. We conclude that the statement admitted under Delaware Rule of Evidence 806 is an accepted exception to the hearsay prohibition and carries sufficient guarantees of truthfulness as not to compromise a defendant's right of confrontation. Accordingly, we affirm the Superior Court's ruling admitting such evidence and affirm the resulting judgment of conviction.

I

The defendant-appellant, John W. Longfellow ("Longfellow"), was convicted, following a jury trial, of Assault in the First Degree (11 *Del.C.* § 613) and Possession of a Deadly

Weapon During the Commission of a Felony (11 *Del.C.* § 1447). As a result of his convictions, Longfellow was sentenced to a lengthy term of imprisonment. On appeal, Longfellow challenges as a violation of the Confrontation Clause of the Sixth Amendment, the Superior Court's ruling admitting the hearsay testimony of a deceased declarant, the victim of the alleged assault, under Delaware Rule of Evidence 806.

Longfellow's criminal convictions stem from the events surrounding a post–Christmas gathering at the home of Woodrow and Pamela Biddle ("Pamela"), near Harrington, Delaware. On December 26, 1994, Longfellow, accompanied by his common law wife Dana Pyle ("Pyle"), visited the Biddle residence for an evening of drinking and card playing. Also present that night, in addition to the Biddles, was the victim, Robert Cameron ("Cameron"). After several hours of card playing both Pyle and Pamela left the kitchen, each for unrelated reasons. According to Woodrow Biddle (Woodrow), it was at this point that an argument ensued between Longfellow and Cameron over whether Longfellow's cousin had been having sexual relations with Pyle. The argument culminated with Cameron being stabbed with a butcher knife.

Seeing Cameron bleeding, Woodrow called for his wife to secure help. Pamela testified at trial that, in response to her husband's plea, she placed two calls to the 911 emergency dispatcher. During the first call she falsely reported that Cameron had been dropped off in her front yard suffering from a stab wound.[1] After further consideration, however, she decided not to protect Longfellow and placed a second 911 call in which she advised the operator that Longfellow was responsible for Cameron's injuries. Pamela further testified that, prior to leaving the Biddle home, Longfellow placed a call in her presence to Marie Kohout, Pamela Biddle's mother, in which he admitted to stabbing Cameron. Following this phone call, Longfellow left the Biddle residence but was later apprehended by Delaware State Police while traveling north towards Wilmington.

Upon being arrested, Longfellow was taken to a State Police troop where, in response to police questioning, he admitted to stabbing Cameron with a butcher knife. At trial, however, Longfellow altered his story and accused Pyle of stabbing Cameron. He stated that throughout the night Pyle had been arguing with Cameron, and at one point when the argument became particularly heated, Longfellow went outside to warm up his car in preparation for the trip home. Upon returning to the kitchen Longfellow claims he witnessed Pyle changing her bloodied clothes and heard her state "I just hurt Bobby." He then noticed that Cameron had been stabbed. Longfellow also denied placing a call to Marie Kohout and claimed his confession to police was motivated by a desire to protect Pyle.

Cameron was taken to the Kent General Hospital Emergency Room at 10:55 p.m. suffering from a stab wound to the chest and a collapsed lung. At approximately 1:30 a.m., Delaware State Police attempted to question Cameron concerning what had occurred. This proved unproductive as Cameron was unable to respond to police questioning.[2] Despite his earlier inability to communicate, Cameron at 1:40 a.m. that same morning, in response to questions concerning his general medical history, told nurse Carla Ruggerio, that he had been "stabbed by a woman." At 8:00 a.m. on December 27, however, Cameron told a police detective that he had been playing cards at the Biddle home when, for no apparent reason, Longfellow stabbed him with a butcher knife and struck him repeatedly.

Although Cameron recovered from his injuries, by the time of Longfellow's trial in late 1995 Cameron had died of causes unrelated to the stabbing. At trial Longfellow's

---

1. Pamela testified that her false reporting was at Longfellow's request. Longfellow also gave the Biddles' daughter a dollar not to identify him to the paramedics.

2. The emergency room physician noted that Cameron, upon his arrival at the hospital, smelled of alcohol and was unable to communicate verbally concerning his injuries. It is likely that the alcohol, combined with the trauma, was a factor in Cameron's unresponsive answers during the initial police questioning.

counsel, pursuant to D.R.E. 803(4), was able to admit into evidence Cameron's hearsay statement to nurse Ruggerio that he had been "stabbed by a woman."[3] In rebuttal, the State sought to introduce, through the police detective who heard it, Cameron's later statement in which he identified Longfellow as his assailant. Defense counsel objected to the admission of this statement because of the inability to confront and cross examine Cameron. The Superior Court in overruling that objection held the testimony was admissible under D.R.E. 806 as an inconsistent statement offered for the purpose of attacking the credibility of an unavailable hearsay declarant. It is this ruling which forms the basis of Longfellow's claim of error.

## II

Although presented as one issue on appeal, Longfellow essentially raises two independent challenges to the admission of Cameron's second hearsay statement. His subordinate argument attacks as error the Superior Court's determination that Cameron's second statement, made to police in the hospital, satisfied the strictures of D.R.E. 806 and was therefore admissible hearsay testimony. Longfellow's primary claim of error is raised in the alternative. He argues that, even if Cameron's second statement is admissible pursuant to D.R.E. 806, under the circumstances present in this case, it is, nonetheless, a violation of his Sixth Amendment right to confront the witnesses against him. We find these arguments to be without merit.

■ On appeal, a trial court's decision regarding the admissibility of evidence will be reviewed under an abuse of discretion standard. *Tice v. State*, Del.Supr., 624 A.2d 399, 401 (1993). In this case, Cameron's second statement was offered by the State pursuant to D.R.E. 806 as a subsequent inconsistent statement.[4] D.R.E. 806 permits a party to attack the credibility of an unavailable declarant through the use of the declarant's prior inconsistent statements, regardless of whether the declarant has been afforded an opportunity at trial to deny or explain the inconsistencies. Cameron's statement to nurse Ruggerio that he had been "stabbed by a woman," was directly contradicted by a later statement in which he told police that Longfellow was the assailant. This sequence of events presents a paradigm scenario for admissibility under D.R.E. 806 since the second statement directly attacks the credibility of the unavailable hearsay declarant. The trial court's ruling was thus in full conformity with the rule.

Having concluded that Cameron's second statement was properly admitted as an exception to the hearsay rule, we next address Longfellow's claim that the trial court's ruling violated his rights under the Confrontation Clause of the Sixth Amendment. The Sixth Amendment, as applied to the States through the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const.Amend. VI. In essence, the Confrontation Clause attempts to afford a defendant the right of "compelling [the witness] to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox v. United States*, 156 U.S. 237, 242–243, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895).

A literal interpretation of this clause, and one deemed extreme by most authorities, would require the exclusion of all hearsay

---

3. D.R.E. 803 states in part:
   The following are not excluded by the hearsay rule, even though the declarant is available as a witness....
   (4) Statements made for purposes of medical diagnosis or treatment and describing medical history, or the inception or general character of the cause or external course thereof insofar as reasonably pertinent to diagnosis or treatment.

4. D.R.E. 806 states in part:
   When a hearsay statement ... has been admitted into evidence, the credibility of the declarant may be attacked, and if attacked may be supported by any evidence which would be admissible for those purposes if declarant had testified as a witness.

statements made by declarants who are unavailable at trial. *Ohio v. Roberts,* 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980). The United States Supreme Court has recognized, however, the need for compatibility between the probative value of certain hearsay evidence and a defendant's right to face his accusers. *White v. Illinois,* 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992). To this end the Court has, over the years and on a case by case basis, attempted to construct meaningful exceptions to the Confrontation Clause while at the same time preserving the constitutional protections guaranteed defendants in criminal proceedings.

In crafting such an accommodation, the Supreme Court in *Roberts* held that in order for hearsay testimony to be admissible and non-offensive to the Confrontation Clause, the offering party must establish that (1) the declarant is unavailable for cross examination at trial and (2) the statement bears adequate indicia of reliability. *Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539. Reliability can be inferred, without more, where a party demonstrates that the out of court statement falls within a firmly rooted hearsay exception as defined in the Federal Rules of Evidence. Id.; *see also Mattox v. United States,* 156 U.S. 237, 243, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895) (finding the use of a dying declaration did not abridge the constitutional rights of the defendant). In those cases where the statement does not fall within a firmly rooted hearsay exception the offering party has the burden of demonstrating particularized guarantees of trustworthiness. *Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539.[5]

Within the parameters of those standards, we consider the constitutionality of the Superior Court's decision to admit into evidence Cameron's second statement. Due to Cameron's premature death prior to trial, the unavailability requirement of the Confrontation Clause has clearly been satisfied. The State has also met the second prong of this test since we have found the challenged

statement was properly admitted pursuant D.R.E. 806, a firmly rooted hearsay exception under both the Federal Rules of Evidence and the Delaware Rules of Evidence. Because it secures admissibility under an accepted hearsay exception, Cameron's second statement need not be bolstered by particularized guarantees of trustworthiness.

Although a determination of reliability is not a predicate to admissibility under D.R.E. 806, we note that the circumstances surrounding Cameron's second statement impart a reliability at least equal to his earlier statement to nurse Ruggerio. The treating physician's report states that, upon his admittance to the emergency room at 10:55 p.m., Cameron was unresponsive to questioning, possibly due to his level of intoxication. Approximately two and one-half hours later, however, Cameron made a statement to Ruggerio which under D.R.E. § 803(4) is empirically reliable and therefore admissible. More than seven hours after the statement to Ruggerio and nine hours after being admitted to the hospital, Cameron identified Longfellow as the person who had stabbed him. With over nine hours for the intoxicating effects of the alcohol to dissipate and the initial trauma of his injury to recede, it would appear that Cameron's second statement to the police carries, at a minimum, the same indicia of reliability as his initial statement to Ruggerio.

In conclusion we find the Superior Court did not abuse its discretion by admitting Cameron's statement pursuant to D.R.E. 806. Once the statement gained admissibility under a recognized exception to the hearsay rule, such evidence carries with it sufficient guarantees of trustworthiness so as not to offend the Confrontation Clause of the Sixth Amendment. The judgment of the Superior Court is, accordingly, AFFIRMED.

---

5. The Supreme Court has stated that "certain hearsay exceptions rest upon such solid foundations that admission of virtually any evidence within them comports with the 'substance of the constitutional protection.'" *Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539. This statement reflects the Court's view that hearsay rules and the Confrontation Clause are designed to protect similar values. *California v. Green,* 399 U.S. 149, 155, 90 S.Ct. 1930, 1933–34, 26 L.Ed.2d 489 (1970); *see also Feleke v. State,* Del.Supr., 620 A.2d 222, 227 (1993).