**IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY**

STATE OF DELAWARE,      )
                           )
        v.               )
                           )     Case No. 1801002664

RANDY FIELDS,          )
                           )
     Defendant.         )

Submitted: May 30, 2018
Decided: July 2, 2018

Julie Mayer, Esquire
Deputy Attorney General
820 N. French Street, 7th Floor
Wilmington, DE 19801
*Attorney for the State of Delaware*

Joseph Hurley, Esquire
Attorney At Law
1215 King Street
Wilmington, DE 19801
*Attorney for Defendant*

## DECISION AFTER TRIAL

On January 7, 2018, Randy Fields, ("Defendant") was arrested by the Delaware State Police and charged with the following offenses; Assault Third Degree in violation of 11 *Del. C.* §0611; Reckless Endangering Second Degree in violation of 11 *Del. C.* §0603; and Malicious Interference with Emergency Communications in violation of 11 *Del. C.* §1313. The Court reserved the decision following a trial on May 30, 2018.

1

## LEGAL STANDARD

After a verbal colloquy and execution of a written waiver, the Defendant elected to waive his right to a jury trial, and have the case heard as a bench trial. As such, the Court sat as the sole trier of fact. Therefore, it is the Court's responsibility to assess the credibility of the witnesses and, where there is a conflict in the testimony, to reconcile these conflicts, "if reasonably possible[,] so as to make one harmonious story."[1] In doing so, the Court takes into consideration the demeanor of the witnesses, their apparent fairness in giving their testimony, their opportunities in hearing and knowing the facts about which they testified, and any bias or interest that they may have concerning the nature of the case.[2]

## FACTS AND PROCEDURAL HISTORY

The following facts were presented as evidence at trial. The State's first witness, Hanna Purse ("Hanna"), the Defendant's prior girlfriend at the time of the incident around January of 2018, and is a Junior at the University of Delaware. Hanna testified that she and the Defendant dated for approximately three (3) years. On January 7, 2018, Hanna went to hang out at the Defendant's house and watch him and his friend Jordan Swann ("Jordan") play video games. Later that day, Hanna offered to drive the Defendant and his friend Jordan to the gym. Hanna remained at the gym while the males worked out. Thereafter, they all decided to go to Wal-Mart to purchase food to take back to the Defendant's house. Jordan's girlfriend picked him up from the gym and the Defendant and Hanna drove in her vehicle towards Wal-Mart. While driving, Hanna testified that she told the Defendant she

---

[1] *Nat'l Grange Mut. Ins. Co. v. Nelson F. Davis, Jr.*, 2000 WL 33275030, at *4 (Del. Com. Pl. Feb. 9, 2000).
[2] *State v. Westfall*, 2008 WL 2855030, at *3 (Del. Com. Pl. Apr. 22, 2008).

2

was failing at school and his response was "it's your fault, you are stupid and worthless." Hanna testified the Defendant started getting angry and aggressive and began yelling so Hanna yelled back. Hanna further testified the Defendant then hit her in the side of her face causing her head to hit the driver's side window. At that point, she pulled into a parking lot.

Hanna first testified that after she parked she told Defendant she was going to call her dad who is a police officer and Defendant snatched the phone out of her hand and threw it on the floor by his feet. She then changed her testimony that her phone may have been in the center console and the Defendant grabbed it before she could. Hanna further testified that she kept trying to grab her phone so Defendant put her in a headlock and told her to never disrespect or talk like that to him again. Hanna further testified he later freed her from the headlock and called Jordan to come pick him up while continuing to push her body away from her phone. Jordan showed up within two (2) minutes and Defendant exited Hanna's vehicle and went with Jordan.

After Defendant left, Hanna testified she called her dad who arrived to where she was parked. She then realized one of the four (4) earrings she wears in her left ear had been punctured through her ear and was bleeding. She later found the earring on her car seat. Hanna and her father drove home and called the police. When they got home Hanna took a picture of the left side of her face.[3] Hanna testified she attempted to make contact with Defendant through telephone calls and social media to ask him "why he did it."

On cross-examination, Hanna testified that her relationship with Defendant had no problems prior to this incident. Defense counsel questioned Hanna about the statement to

---

[3] State's *Exhibit 1.*

3

the police officer regarding what happened to her phone in the car which was different to her present testimony that the Defendant did not "smack" the phone out of her hand. Defense counsel also demonstrated how difficult it would be for Defendant to put Hanna in a choke hold with each arm, showing the difference in Hanna's testimony and the police report.

Trooper Marco Ferraro ("Ferraro") testified he was assigned to investigate the incident. Ferraro responded to Hanna's residence regarding a domestic violence call and interviewed Hanna without her parents present. Ferraro testified Hanna had a red mark on her forehead and her ear lobe had blood on it. After Ferraro left Hanna's residence he called the Defendant to get his version of events. Ferraro instructed Defendant to report to Troop 2 where he was arrested for the above offenses.

On redirect, Hanna testified regarding a print out of a text message.[4] Hanna testified this text message was sent from her to Jordan about one (1) week after the incident which stated in part, "I'm gonna do everything I can to make sure he's [Defendant] found guilty and gets his scholarship taken away."

After the conclusion of the State's case the Defendant testified that during his relationship with Hanna, she would physically lash out at him when she was angry. Defendant stated on previous occasions Hanna would slap his face and punch him with her fist and he would hold her until she calmed down. On January 7, 2018, Defendant testified that Hanna called him numerous times that morning indicating she wanted to come over and then she just showed up uninvited. When Hanna arrived at Defendant's house, Defendant

---

[4] Defendant's *Exhibit 1.*

asked his father to "ask Hanna to leave" to which his father declined. Defendant testified Hanna drove him and Jordan to the gym and then on the way to Walmart Hanna told Defendant that she was failing at the University of Delaware to which Defendant told Hanna "it is her fault and she is dumb." While stopped at a traffic light, Defendant testified he told Hanna the relationship is over and she began screaming and striking him with her fists. Defendant testified he attempted to move out of the way and when she turned towards him swinging her fists he open handed "shoved" Hanna away from him. Defendant further testified his "shove" caused Hanna's head to hit the driver's side window, which was an accident.

Defendant testified when Hanna made the U-turn her phone was in the center console and slid over to the passenger side floor. Defendant further testified he made no movements to prevent Hanna from her cell phone and Hanna at no point said she was going to call her dad. Defendant then used his own cell phone to call Jordan to come pick him up from where they were parked. Jordan arrived in less than two (2) minutes and Defendant got into Jordan's car and left. Defendant further testified that he never placed Hanna in a chokehold. After being arrested Defendant blocked Hanna's cell phone number but testified Hanna would call him daily from random and blocked phone numbers. Defendant further testified that Hanna made fake social media accounts to reach out to him in an effort to get back together. On cross examination, Defendant testified he talked to Hanna after the arrest and had asked if her father could drop the charges.

Jordan, who stated he was Defendant's best friend, testified regarding the events on January 7, 2018 and his observations of the relationship between Hanna and Defendant.

5

Jordan testified when he arrived to pick up Defendant, he told him, "she was hitting me." Jordan further testified he spoke with Hanna and Defendant about what happened as he is friends with both. Jordan stated he does not know what happened that day in the car just that when Defendant called him on the phone asking to come get him, Hanna was in the background screaming like "she wasn't getting her way." Furthermore, Jordan testified that Hanna was a controlling and insecure girlfriend to Defendant and he had witnessed Hanna strike Defendant while driving her car on prior occasions.

Defendant's father Randolf Fields ("Randolf") testified regarding the morning of January 7, 2018. Randolf testified Defendant and himself attended church that morning and while at home later that day, Hanna came over to the house. Randolf further testified Defendant asked him to "ask Hanna to leave" to which he told his son, "just be nice."

Lastly, Defendant's mother Sherry Lynn Martin ("Sherry") testified as to the blocked calls Defendant was receiving from Hanna. Sherry testified she was upset about the fifty (50) plus, back-to-back text messages her son was receiving and the entire incident.

## DISCUSSION

The Defendant alleges that his actions towards Hanna were reasonable under the circumstances and amounts to a justification defense. Under 11 *Del. C.* §464(a); The use of force upon or toward another person is justifiable when the defendant believes that such force is immediately necessary for the purpose of protecting the defendant against the use of unlawful force by the other person on the present occasion.[5] Under Section (b); a person employing protective force may estimate the necessity thereof under the circumstances as

---

[5] Del. Code Ann. tit. 11, § 464 (West).

6

the person believes them to be when the force is used, without retreating, surrendering possession, doing any other act which the person has no legal duty to do or abstaining from any lawful action.[6] Because justification is not an affirmative defense, a defendant need not prove the defense by a preponderance of the evidence,[7] but "some credible evidence supporting the defense" is required.[8] "Evidence supports a defense when it tends to establish the existence of each element of the defense."[9]

The evidence in this case presents a situation where the relationship of two (2) young people became strained. The testimony of Jordan, a friend of both individuals, indicates a past where he observed Hanna become aggressive with the Defendant and he had restrained her. On the day in question, there is evidence of Hanna's repeated attempts of calling Defendant with no response and then appearing at his residence without notice. While her appearance would not have been of any consequence because of the relationship, what is unusual is that the Defendant asked his father to ask Hanna to leave. This request to his father raises many possibilities which I need not explore at this point but it does point out that the Defendant did not want to confront Hanna.

In evaluating the testimony of the witnesses, the State's witnesses' version of the facts appears to have shifted at general points. While it is not unusual for some deviation in testimony because memory fades over time but in this instance, it does affect her credibility. Additionally, the text message admitted suggests that the motive of State's witness is more of

---

[6] *Id.*

[7] "When a defense declared by this Criminal Code or by another statute to be an affirmative defense is raised at trial, the defendant has the burden of establishing it by a preponderance of the evidence." *Id.* at § 304(a).

[8] *Id.* at §303(a).

[9] *Id.* at §303(b).

revenge. When this is evaluated with the defense's witness testimony that did not present shifting, it is clear that the defense presented a truer picture of the events and the relationship.

Therefore, I find the Defendant's justification defense plausible. It seems unreasonable that during a verbal dispute, Defendant intentionally struck Hanna without any physical provocation. In addition, the State's witness's testimony failed to prove beyond a reasonable doubt that Defendant caused reckless or intentionally physical injury without the presence of unlawful force being brought upon him. Defendant was seated in a car that was stopped at a red light when Hanna began to swing at him. He was justified to use force to protect himself from injury and the force used was not excessive. "In a claim for self-defense, the essential element is whether the defendant subjectively believed the use of force was necessary for his protection,[10] and not whether the victim acted in conformity with a character trait of aggressiveness."[11] Delaware Rule of Evidence 404(b) provides that evidence of other crimes, wrongs or acts may be introduced for a proper non-character purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.[12] "This list is not exclusive, however, and evidence meeting the standard of admissibility may be introduced whether or not it fits into one of these categories."[13]

---

[10] *See, e.g., Moor v. Licciardello,* 463 A.2d 268, 271 (Del. 1983).
[11] *Tice v. State,* 624 A.2d 399, 401 (Del. 1993).
[12] Del. R. Evid. 404(b).
[13] *Getz v. State,* 538 A.2d 726, 730 (Del. 1988), *citing Tice* at 402.

Since one of the factors that influences the reasonable belief of a defendant, threatened with imminent assault, is the defendant's knowledge or awareness of the victim's past acts of violence, these instances are relevant for their proper non-character purpose.[14] Subject to satisfaction of the requirements articulated in *Getz*, the defense was entitled to use this evidence under D.R.E. 404(b) to show the fear experienced by the defendant, and thus, establish the subjective state of mind required to assert the claim of self-defense.[15]

Here, the credibility of the witnesses and evidence provided by the defense supports a justification defense against the crimes charged. Defendant testified he was on the verge of breaking off the relationship with Hanna and he did not want her to come over his house on January 7, 2018. Furthermore, Defendant asked his dad to ask Hanna to leave but was told to "just be nice" to her, which he attempted to do. Defendant's position is supported by his friend Jordan's testimony that Hanna had previously struck Defendant with her fists while driving. Therefore, the evidence shows Defendant's acts were justifiable under the circumstances.

## CONCLUSION

For the foregoing reasons, the Court finds the Defendant **NOT GUILTY** with respect to all of the offenses charged.

**IT IS SO ORDERED.**

_____
Alex J. Smalls,
Chief Judge

---

[14] *Tice* at 402.
[15] *Id.*