Aaron KELLY, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 610, 2008.

Supreme Court of Delaware.

Submitted: June 4, 2009.
Decided: Aug. 27, 2009.

---

Michael C. Heyden, Esquire, (argued), Wilmington, DE, for Appellant.

Elizabeth R. McFarlan, Esquire, (argued) Department of Justice, Wilmington, DE, for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

BERGER, Justice:

In this criminal appeal we consider whether the trial court committed reversible error when it limited cross-examination of the complaining witness. Appellant was charged with assault in a correctional facility, and claimed self-defense. Appellant believed that the complaining witness was going to rape him, and he wanted to introduce evidence that the complaining witness was serving his time for committing rape. The trial court concluded that the nature of the crime would be too prejudicial, and that all the jury could be told was that the complaining witness had committed felonies. We conclude that the trial

court's ruling impermissibly restricted appellant's defense. Accordingly, the conviction must be reversed.

## FACTUAL AND PROCEDURAL BACKGROUND

In November 2007, Aaron Kelly was incarcerated at the Delaware Correctional Center, serving a three-year sentence for attempted burglary. David Veru was housed in the cell next to Kelly. He had been incarcerated for 19 years, and was serving a life sentence for raping a woman. During recreation time on November 17, 2007, when all the cells in the section were unlocked for one hour, Kelly went to take a shower. Veru went to the same shower a few minutes later.

Although there is a dispute as to what precipitated it, the two men began fighting. According to Veru, he was attacked by Kelly for no reason. According to Kelly, Veru grabbed his genitals and would not let go until Kelly hit Veru several times. After the initial altercation at the shower, the fight continued (or was renewed) inside and in front of Kelly's cell. Veru testified that he was so enraged by Kelly having beaten him in the shower that he "went crazy" and decided to "avenge" himself. Veru returned to his own cell, and put a lock into a sock to use as a weapon. He then returned to Kelly's cell and swung at Kelly's head while Kelly's back was turned. The lock-in-a-sock either missed or grazed Kelly's shoulder, and flew out of Veru's hand. The two resumed their fight, and Kelly knocked Veru to the ground. When the prison guards came to stop the fight, Kelly was kicking Veru, who was curled up on the ground. Kelly suffered little, or no, physical injury. Veru suffered fairly serious injuries.

At trial, Kelly claimed that he acted in self-defense. He testified that for about two months before this incident, Veru made sexual advances, and that each time, Kelly rebuffed Veru. When Veru approached Kelly in the shower, Veru grabbed Kelly's genitals, causing great pain. Kelly had to punch Veru six times to get Veru to let go. Kelly then returned to his cell. He was putting on his sneakers, with his back to the cell door, when Veru came up behind him and swung at him with the lock-in-a-sock. According to Kelly, Veru said, "I'm going to make you my bitch." Kelly said they both started swinging at each other and "exchanging blows." Veru fell to the ground shortly before the prison guards arrived. They told Kelly to back off, and he did.

Veru was not charged with any crime. Kelly was charged with and convicted of assault in a correctional facility. This appeal followed.

## DISCUSSION

The sole issue on appeal is whether Kelly should have been allowed to present evidence that Veru had been convicted of first degree rape. The trial court decided that the probative value of knowing the specific crime was outweighed by substantial prejudice. Accordingly, the trial court ruled that Kelly could present evidence that Veru was convicted of felonies, but could not provide a description of the crimes or their titles. We review the trial court's evidentiary ruling for abuse of discretion.[1] If we conclude that there was an abuse of discretion, we then must determine whether the error caused "significant prejudice so as to have denied [Kelly] a fair trial."[2]

**1.** *Allen v. State,* 644 A.2d 982, 985 (Del.1994).

**2.** *Charbonneau v. State,* 904 A.2d 295, 304 (Del.2006) (Quotations and citations omitted.).

The facts about the altercation itself were largely undisputed. Veru and Kelly got into a fight—first in the shower area, and then, moments later, in the area around Kelly's cell. Kelly is physically larger than Veru, and it is apparent from their respective injuries that Kelly "won" the fight. The questions for the jury were whether Veru was the aggressor, whether Kelly believed Veru was threatening to sexually assault him, and whether Kelly used more force than he believed was necessary to defend himself. Kelly testified that Veru had been making sexual overtures; that he grabbed Kelly's genitals in the shower; and that when Veru came at Kelly with the lock-in-a-sock, Veru said that he was going to make Kelly his bitch. Kelly's witnesses were other inmates, who testified that Veru was taunting Kelly and that Veru had homosexual relationships in prison. Veru denied making sexual advances toward Kelly, and claimed that Kelly attacked him in the shower for no reason. Prison guards described Veru as a model prisoner with no history of homosexual activity.

It is within this factual framework that we must consider the discretionary evidentiary ruling. Under certain circumstances, justification is a defense to criminal charges:

> (a) The use of force upon or toward another person is justifiable when the defendant believes that such force is immediately necessary for the purpose of protecting the defendant against the use of unlawful force by the other person on the present occasion.
>
> (b) . . . [A] person employing protective force may estimate the necessity thereof under the circumstances as the person believes them to be when the force is used, without retreating. . . .
>
> (c) The use of deadly force is justifiable under this section if the defendant believes that such force is necessary to protect the defendant against death, serious physical injury, kidnapping or sexual intercourse compelled by force or threat. . . .[3]

One of the essential elements of a claim of self-defense is the defendant's subjective belief that force was necessary for self-protection. While evidence of Veru's rape conviction is not admissible to prove that Veru was attempting to rape Kelly, it may be admissible to establish Kelly's state of mind:

> Since one of the factors that influences the reasonable belief of a defendant, threatened with imminent assault, is the defendant's knowledge or awareness of the victim's past acts of violence, these instances are relevant for their proper non-character purpose. Subject to the satisfaction of the requirements articulated in *Getz*, the defense was entitled to use this evidence . . . to show the fear experienced by the defendant, and thus, establish the subjective state of mind required to assert the claim of self-defense.[4]

Under *Getz v. State*,[5] the decision to admit evidence of other crimes turns on whether: 1) the prior crime is material to an issue in dispute; 2) it is to be admitted for a proper purpose; 3) the prior crime has been proven by "plain, clear and conclusive" evidence; 4) the prior crime is too remote in time; and 5) the probative value of the evidence outweighs its prejudicial effect. The trial court did not conduct a *Getz* analysis, although it did decide that the rape conviction would be highly preju-

---

**3.** 11 *Del. C.* § 464.

**4.** *Tice v. State,* 624 A.2d 399, 402 (Del.1993).

**5.** 538 A.2d 726, 734 (Del.1988).

dicial. After considering the *Getz* factors, we are satisfied that the evidence should have been admitted. Kelly's knowledge that Veru is a rapist was material to his belief that Veru was threatening to rape him. It would be admitted for a proper purpose, as noted above. The prior conviction could be proven conclusively through court records. Although the conviction was 17 years old, we find no remoteness problem because Veru has been incarcerated since that conviction.[6] Finally, while the fact that Veru committed rape undoubtedly is prejudicial, it has significant probative value in assessing Kelly's professed fear of being sexually assaulted.

Having determined that Kelly should have been allowed to examine Veru about the fact that he had been convicted of rape, the question becomes whether the trial court's error requires reversal. We find that it does. Kelly is a significantly larger man than Veru. Thus, for Kelly's claim of self-defense to be at all credible, the jury would have to accept that Kelly thought Veru was about to sexually assault him. Both Veru and Kelly were convicts, so the jury did not learn much about Kelly's state of mind when it heard how many felonies Veru had committed. The critical fact was Veru's rape conviction, which could explain both the nature and severity of Kelly's response. Because we conclude that Kelly was significantly prejudiced by the exclusion of this evidence, we must reverse for a new trial.

### CONCLUSION

Based on the foregoing, the judgment of conviction for assault in a correctional facility is reversed, and this matter is re-manded for a new trial. Jurisdiction is not retained.

---

6. *Cf.* DRE 609 (Prior convictions may be admitted for impeachment if not more than 10 years have elapsed since conviction or release, whichever is later.).