IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,               )
                                 )
            Plaintiff,           )
                                 )
        v.                       )      ID No. 1212015998
                                 )
JOSHUA STEPHENSON,               )
                                 )
            Defendant.           )

# MEMORANDUM OPINION[1]

The State has moved to exclude expert psychiatric testimony of Susan E. Rushing, M.D. on several grounds, including the testimony is unreliable and that she is not qualified to render some of her opinions. The court need not reach these issues because, under the circumstances of this case, it finds that Dr. Rushing's testimony would not be helpful to the trier of fact.

*A. Facts*

The State has advised the court that it will offer evidence that on Christmas Eve 2012 the defendant was visiting the home of his sister,

---

[1]  Oral argument on this, and other motions, took place on June 9, 2014. The court announced from the bench its rulings (and the reasons therefore) on the pending motions, including this one, that day. Because the ruling on this motion may be of some interest to the criminal law bar, the court has issued this memorandum opinion which memorializes, and to a limited extent, supplements its bench ruling.

the victim, Myron Ashley and their child, Myron Ashley, Jr. During defendant's visit the sister and her six-year-old son went upstairs, leaving defendant and the victim alone downstairs. Suddenly there was the sound of gunshots. The sister and her child ran downstairs and found the victim on the floor bleeding from the chest. When they got downstairs the six year old saw the defendant hide a weapon in the sofa and later told the police about what he had seen. When the sister tried to talk to the defendant he punched her in the face and fled out the door. The shooting victim was rushed to the Christiana Hospital where he was pronounced dead. The defendant was arrested the next day at his grandmother's house. Gunshot residue was found on defendant's hands.

### B. Dr. Rushing's report

Defendant retained Dr. Rushing as a psychiatric expert. Her credentials are quite impressive. She earned a Bachelor of Science in Brain and Cognitive Science at M.I.T., followed by a Doctor of Medicine from Yale and a J.D. from Stanford. Dr. Rushing completed a Pediatrics internship, a residency in psychiatry and a residency in forensic psychiatry and is board certified in psychiatry. Currently she is employed as an Assistant Professor of Psychiatry at the University of Pennsylvania Medical School.

Dr. Rushing interviewed defendant on two different occasions. She interviewed family members and reviewed the defendant's school, department of labor, Family Court Department of Services for Children,

medical and psychiatric records including Delaware Psychiatric Center records stemming from defendant's evaluation following the Christmas Eve events. Among other things, Dr. Rushing found a "several year history of psychotic, manic and depressive symptoms." Dr. Rushing arrived at the following diagnosis:

- Schizoaffective Disorder, bipolar type

- Neglected child

- Learning disability

- Rule out intellectual disability

After quoting Delaware's self protection statute, Dr. Rushing observed that "at the time of my interview, Mr. Stevenson was able to articulate facts that could support a Justification of use of force for self protection."

## C. The parties' contentions

The State argues that Dr. Rushing is not qualified to give an opinion on whether the facts recounted to her by the defendant constitute self defense under Delaware law. At oral argument defendant's counsel disavowed any intention of offering Dr. Rushing's testimony for this purpose.[2] The court will therefore not consider this

---

[2] The court agrees that such testimony is inadmissible. As discussed later in the text, D.R.E. 702 allows expert testimony only if it would assist the trier of fact. In *Jolly v. State*, 1995 WL 715868 (Del.) the Supreme Court opined that Rule 702,

> allows opinion testimony by an expert only if it will assist the trier of fact to gain scientific, technical, or other specialized knowledge. If jurors, without the assistance of the expert, are as capable of answering a question as an expert, then the expert's opinion would not be helpful and is not admissible.

objection. Instead, according to Defendant, Dr. Rushing's testimony is being offered to show how he perceived events on December 24. Defendant's theory is that this is relevant because it shows that defendant had a subjective belief that his life was in danger when he shot the victim. This is the nub of the present dispute.

## D. Analysis

The first question the court must address is whether psychiatric testimony is admissible to show the defendant's state of mind in a self-defense case. The justification of self defense in Delaware turns on the subjective belief of the defendant. The statute defining self defense repeatedly refers to the defendant's belief:

> (a) The use of force upon or toward another person is justifiable *when the defendant believes that such force is immediately necessary* for the purpose of protecting the defendant against the use of unlawful force by the other person on the present occasion.
>
> (b) Except as otherwise provided in subsections (d) and (e) of this section, a person employing protective force may estimate the necessity thereof *under the circumstances as the person believes* them to be when the force is used, without retreating, surrendering possession, doing any other act which the person has no legal duty to do or abstaining from any lawful action.
>
> (c) The use of deadly force is justifiable under this section *if the defendant believes that such force is necessary* to protect the

The jury here will be capable of deciding whether a given set of facts constitutes self defense without the assistance of expert testimony. Therefore Dr. Rushing's testimony in this regard is inadmissible.

> defendant against death, serious physical injury, kidnapping or sexual intercourse compelled by force or threat.[3]

It is not surprising therefore that the courts of this state have consistently found that it is the subjective belief of the defendant that is central to self defense. The test, according to the Supreme Court is the "*subjective* test of what the defendant actually believed as to such necessity, *i.e.* what the defendant actually thought, which determines whether he was acting in self defense."[4]

Here defendant argues that Dr. Rushing's psychiatric testimony should be admitted to show how he perceived events at the time of the shooting. This, according to Defendant, is relevant to what he actually believed at that time. Neither side, nor the court itself, could find any case which decided whether psychiatric testimony is admissible to show the actual belief of the defendant at the time of the alleged crime. Two Delaware Supreme Court cases, however, provide considerable guidance. In *Tice v. State,*[5] the defendant, who claimed a shooting was in self defense, sought to introduce evidence of the victim's prior bad acts. The Supreme Court reasoned that the defendant's belief at the time of the shooting was central to his defense and evidence of the victim's prior bad acts was admissible to show the defendant's state of mind.

> Subject to satisfaction of the requirements articulated in *Getz,* the defense was entitled to

---

[3]   11 *Del. C.* sec. 464 (emphasis added)
[4]   *Coleman v. State,* 320 A.2d 740,741 (Del. 1974)
[5]   624 A.2d 399 (Del. 1993).

use this evidence under D.R.E. 404(b) to show the fear experienced by the defendant, and thus, establish the subjective state of mind required to assert the claim of self-defense.[6]

More recently, in *Kelly v. State*[7] the Supreme Court again considered whether evidence of prior bad acts of the victim is admissible in self-defense cases. In *Kelly* the defendant, who was serving time for a burglary conviction, was charged with assault in a correctional facility after an altercation with another prisoner. Kelly claimed self defense and sought to introduce evidence that the other inmate was serving a term of life imprisonment for rape. The trial court excluded that testimony, but on appeal the Supreme Court ruled this exclusion was an abuse of discretion. Similar to its opinion in *Tice,* the Supreme Court reasoned:

> "[o]ne of the essential elements of a claim of self-defense is the defendant's subjective belief that force was necessary for self-protection. While evidence of [the victim's] rape conviction is not admissible to prove that [the victim] was attempting to rape Kelly, it may be admissible to establish Kelly's state of mind"[8]

*Tice* and *Kelly* leave no doubt that extrinsic evidence is admissible to show the defendant's actual belief for purposes of self-defense claims. No stretch of logic is required, therefore, to conclude that appropriate psychiatric testimony may be admitted to show how a defendant with a

---

[6] *Id. at 402.* The *"Getz"* in the quotation refers to *Getz v. State,* 538 A.2d 726 (Del. 1988) in which the Supreme Court established certain standards for the admissibility of prior bad acts. It is not necessary to consider *Getz* here because the defendant is not seeking to introduce evidence of prior bad acts.
[7] 981 A.2d 547 (Del. 2009)
[8] *Id.* at 550.

psychiatric condition might perceive events and how that perception affects his actual belief as to what is occurring. Courts in other states have reached the same conclusion[9] and have admitted such testimony. The court holds, therefore, that psychiatric testimony which otherwise satisfies the rules of evidence may be admitted to show the defendant's subjective belief in self defense cases.

The holding that psychiatric testimony can be relevant to the defendant's subjective belief does not by itself mean that Dr. Rushing's proposed testimony is admissible. Rule 702 allows admission of expert testimony only if the testimony will assist the trier of fact in deciding some factual issue.[10] The proverbial seminal case relating to the admissibility of expert testimony is the United States Supreme Court's decision in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*[11] Although *Daubert* was an interpretation of F.R.E. 702 and therefore not binding on the states, the Delaware Supreme Court--like many other state courts with evidentiary rules similar to Rule 702--has followed its reasoning.[12] In *Daubert* the Court had this to say about Rule 702's requirement that expert testimony must assist the trier of fact:

> Rule 702 further requires that the evidence or testimony "assist the trier of fact to understand

---

[9] See, e.g. *Commonwealth v Light*, 326 A.2d 288 (Pa. 1974); *Greco v. State*, 48 A.3d 816 (Md. 2012).
[10] The rule provides in pertinent part "If scientific, technical or other specialized knowledge **will assist the trier of fact** to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise . . . . " (emphasis added)
[11] 509 U.S. 579 (1993).
[12] *Nelson v. State,* 628 A.2d 69 (Del. 1993).

the evidence or to determine a fact in issue. This condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful. An additional consideration under Rule 702 and another aspect of relevancy—is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. The consideration has been aptly described by Judge Becker as one of "fit." "Fit" is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes. The study of the phases of the moon, for example, may provide valid scientific "knowledge" about whether a certain night was dark, and if darkness is a fact in issue, the knowledge will assist the trier of fact. However (absent creditable grounds supporting such a link), evidence that the moon was full on a certain night will not assist the trier of fact in determining whether an individual was unusually likely to have behaved irrationally on that night. Rule 702's "helpfulness" standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.[13]

There is nothing in Dr. Rushing's report addressing how Defendant perceived events on December 24 and therefore her testimony will not assist the trier of fact on this issue. Indeed, Dr. Rushing seemingly disavows any attempt to relate Defendant's mental condition to his perception of those events--she states in her report that "[i]f Mr. Stevenson presents a defense of self-defense at trial, Mr. Stevenson's [sic] mental illness is unlikely to be relevant to such a defense."

---

[13] *Id.* at 591-2 (some internal quotation marks omitted)

As mentioned earlier, Dr. Rushing diagnosed Defendant as suffering from Schizoaffective Disorder, bipolar type. But there is simply no discussion in her report about how this disorder affected defendant's perceptions of the December 24 events. Rather the only two times Dr. Rushing arguably draws any conclusions about the alleged crime are her assertions that:

- "Mr. Stevenson's mental illness puts him at a higher risk of being a victim of a violent crime." and

- "The fact that Mr. Stevenson was suffering from a psychotic and manic episode at the time of the crime, does not rule out the possibility that Mr. Stevenson was threatened by Mr. Ashley."

The fact that, as a general matter, Defendant's mental condition "put him at a higher risk of being a victim of a crime" is not relevant to how, on the night of December 24, he perceived the events taking place. Dr. Rushing's other observation—the defendant's episodic mental problems do "not rule out the possibility [he] was threatened"--goes without saying. But the issue is not whether Defendant was *in fact* threatened, it is whether he actually *believed* he was threatened.

Other courts have excluded expert psychiatric testimony in cases similar to the instant matter when the proposed testimony sheds no light on how the defendant perceived the events giving rise to the alleged self

defense. For example, in *Commonwealth v Mellone*,[14] the defendant submitted a report of a psychiatrist describing, among other things, the defendant's abuse of drugs and alcohol and relying upon a mental health center's diagnosis that the defendant suffered from "bipolar disorder" or "manic depressive" disorder. The Massachusetts Court of Appeals upheld the exclusion of this testimony which was offered, in part[15], to support the "actual belief" element of Massachusetts' self defense statute. The appellate court reasoned that the psychiatrist's report said nothing about how the defendant perceived the events ostensibly giving rise to the need for self defense:

> Whatever may be held about the propriety of admitting proof of mental impairment as bearing on a defendant's belief that he was in peril, here Dr. Weiss's letter had as little to contribute to the question whether the defendant could (or did) have the requisite belief . . . .[16]

More recently, in *Commonwealth v. Ventura*,[17] a Pennsylvania appellate court upheld the exclusion of psychological testimony in a self defense case because that testimony did not relate to the defendant's perception of events:

> [P]sychiatric testimony is generally admissible to support a theory of self-defense to show the subjective element of the defendant's state of mind at the time of the occurrence. Here, in Dr.

---

[14] 508 N.E.2d 632 (Mass. App. 1987).

[15] The testimony was also offered to show that the defendant could not form the requisite intent to kill. That is not at issue here.

[16] *Id. at 636-7.*

[17] 975 A.2d 1128 (Pa. Super. 2009)

> Schneider's report, aside from a bald statement that Ventura lacked specific intent when he stabbed Victim, based upon Ventura's previous personal history, there is no assessment or opinion regarding Ventura's state of mind at the time of the crime. Instead, the report more closely resembles a history of Ventura's life and his emotional state since incarceration and is not relevant for the reasons advanced by Ventura.[18]

Defendant does not argue so much the sufficiency of Dr. Rushing's conclusions as he does that Dr. Rushing's report was merely a summary and that she might have had more to say about the matter. His contention however runs afoul of Criminal Rule 16 which requires, in certain instances including this one, the defendant to disclose in writing "the identity of the [expert] witness and the substance of the opinions to be expressed."[19] While this rule does not require the defendant to recite the expert's entire testimony *in haec verba,* it does require defendant to provide enough information to give notice to the state of the opinions to be offered and the grounds for those opinions. As mentioned previously, Dr. Rushing's report is devoid of any mention of the defendant's mental capacity on the night of December 24 and its impact on his perception of the events that night Under these circumstances it can not be said that the State was provided with fair notice that Dr. Rushing would testify about how his mental condition affected his perception of the events on December 24.

---

[18] *Id.* at 1140 (internal quotation marks omitted).
[19] Superior Court Criminal Rule 16 (d)(1)(c).

The State's motion to exclude the testimony of Dr. Rushing is therefore **GRANTED.**

_____

Date: June 20, 2014

John A. Parkins, Jr.
Superior Court Judge

oc:    Prothonotary

cc:    John W. Downs, Esquire and Barzilai K. Axelrod, Esquire
       Wilmington, Delaware - Attorneys for the State

       Kathryn A.C. van Amerongen, Esquire, Wilmington, Delaware –
       Attorney for the Defendant